USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 22, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                             :
DAVID NORMAN a/k/a JIM NORMAN,                               :
                                                             :
                            Petitioner,                      :    16-cv-3053 (KBF)
                                                             :    07-cr-0961 (KBF)
            -v-                                              :
                                                             :    OPINION & ORDER
UNITED STATES OF AMERICA,                                    :
                                                             :
                            Respondent.                      :
                                                             :
------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

David Norman, currently incarcerated at A.U.S.P. Thomson, brings a pro se petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. He was convicted by a unanimous jury on January 30, 2013 of conspiracy to commit wire fraud; he was then sentenced on July 12, 2013 to 240 months' incarceration as well as $1,731,805.34 in restitution and $2,197,637.04 in forfeiture. Petitioner now challenges his sentence and conviction on the grounds that, inter alia, he received ineffective assistance of counsel; the Court erred in its evidentiary rulings; and his extradition violated the United States-Canada extradition treaty. For the reasons set forth below, the petition is DENIED.

I.  BACKGROUND

Starting in at least 2004, petitioner, a Canadian citizen, began soliciting funds through the Jim Norman Program (the "Norman Scheme"), an "advance fee" scheme. The Norman Scheme worked as follows: petitioner and his co-conspirators convinced their victims to make initial "investments" by promising them that, as

"investors," they would see 500% returns within weeks. (Presentence Investigation Report ("PSR") ¶¶ 13–14.) Petitioner and his co-conspirators represented through email, telephone, and word-of-mouth that so-called "investors" would receive funds held by the World Bank in an account in a foreign country—funds which could be repatriated once the fees and expenses (e.g., legal fees) incurred by the account were paid.[1] (Id. ¶ 14–15.) Petitioner claimed the "fees" were paid to "agents" identified by the International Monetary Fund ("IMF") and the World Bank. (Id. ¶ 41; Trial Tr. at 840:8–14.) He also told his victims that their initial investments would be secured by personal or contractual guarantees from him and his associates. (PSR ¶ 14.)

To bolster his credibility, petitioner maintained a website—for which he paid $16,000—that portrayed him as a "successful, sophisticated, and important millionaire international financier." (Id. ¶ 39.) In fact, he "maintained a de minimis income." (Id.) Most of petitioner's victims were United States residents; to contact them, petitioner used "facilitators" living in the United States. (Id. ¶ 37.) Several of these facilitators were petitioner's co-defendants in the criminal case.

Once victims made initial investments, petitioner persuaded them to invest more by promising greater returns and/or threatening that returns could not be realized without the payment of additional, unexpected fees. (Id.) Ultimately, no victim received the promised returns, and only a few received even a partial return

---

[1] Petitioner also told investors that a "huge portion" of the realized funds would be sent to orphanages around the world. (PSR ¶ 39.)

of their investments.  (Id.)  Instead, petitioner used the funds—six to nine million dollars in all—for personal expenses, hundreds of ATM withdrawals, and wire transfers to himself and friends.  (Id ¶¶ 41–42; Trial Tr. at 840:8–14.)  Financial records demonstrate that between November 2004 and March 2005, for example, he received $1.6 million, withdrew $87,000 from ATMs, and purchased, inter alia, stereo equipment for $7,896, men's clothing for $13,612, Gucci luggage for $5,700, and a chair for $4,300.  (PSR ¶ 42.)

The Federal Bureau of Investigations ("FBI") spoke with more than fifty victims, monitored phone calls, and reviewed emails, financial records, and other communications between the perpetrators of the Norman Scheme and victims of it.  (Id. ¶ 15.)  For example, the FBI ascertained through emails that at least one victim was promised a return of $4 million on a $50,000 investment in an account held with the World Bank in Switzerland, which itself purportedly held more than $100 million dollars.  (Id. ¶ 16.)  Another was promised a 500% return on her investment of $20,000.  (Id.)  A third victim, a disabled Vietnam veteran who survived on a small fixed income, "invested" $20,000 and was then "taunted" by petitioner when he accused him of fraud after he did not receive any returns.  (Id. ¶ 44.)  Petitioner and his co-conspirators also induced their victims to recruit friends and family members, who also made investments on more than one occasion.  (Id. ¶ 16.)  Victims were told to keep their investments secret, and they were sometimes asked to sign non-disclosure agreements—which on at least one occasion included an affirmation that the victim was not a member of U.S. law enforcement.  (Id. ¶ 40.)

3

Petitioner was arrested on November 14, 2011 and extradited from Canada to the United States. Though the case was originally in front of Judge Sand, it was transferred to the undersigned on September 21, 2012. This Court kept the trial date of January 22, 2013, and trial was ultimately held from January 22–30, 2013. The Government presented an overwhelming amount of evidence, including victims' testimony, monitored communications, and financial records. As particularly relevant to the instant petition, during trial, petitioner's counsel contemplated calling petitioner's accountant as a witness. (Trial Tr. at 586:16–588:4.) Ultimately, the accountant was not called as a witness.[2] Additionally, petitioner testified about a purported U.S. Treasury document, (see, e.g., Trial Tr. at 814:4–17), but his counsel never introduced the document into evidence.

On January 30, 2013, a unanimous jury convicted petitioner of wire fraud. On July 12, 2013, he was sentenced to twenty years in prison a well as restitution in the amount of $1,731,805.34 and forfeiture in the amount of $2,197,637.04. (ECF No. 270, Sen. Tr. at 53:4–5; id. 55:9–24.) Petitioner appealed to the Second Circuit, where he argued that his sentence was substantively and procedurally unreasonable. A Second Circuit panel unanimously rejected the appeal. United States v. Norman, 776 F.3d 67 (2d Cir. 2015). Throughout the trial and appeal, and even now, Norman maintains that he is innocent and that the program was real,

---

[2] The Court put petitioner and his counsel "on notice" to bring the accountant to the United States and that the trial would not be delayed for an "11th hour" witness if he was unable to appear. (Trial Tr. at 587–89.)

4

despite testimony given by, inter alia, IMF and World Bank officials that the "program" petitioner advertised did not exist. (See, e.g., Trial Tr. at 400–02.)

Throughout trial, petitioner was represented by Deveraux Cannick and Jennifer Arditi. (Id.) At sentencing and throughout his appeal, he was represented by Megan Wolfe Benett. (ECF No. 270, Sen. Tr.; ECF No. 246, Notice of Attorney Appearance.)

## II. LEGAL PRINCIPLES

### A. Pro Se Petitions

The Court applies a "liberal construction of [pro se] pleadings, which should be read 'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)). Nevertheless, a Court may dismiss a petition under § 2255 without holding an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255); see also Fed. R. Governing Sec. 2255 Proceedings for the U.S.D.C. 4(b) ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.").

### B. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, petitioner "must [first] show that counsel's representation fell below an objective standard of

5

reasonableness," as measured against "prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 688 (1984). In addition, he must demonstrate that counsel's "deficient performance prejudiced the defense," id. at 687, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

As to the first prong of Strickland, attorney conduct is subject to an objective standard of reasonableness, and is accorded deference in light of the "range of legitimate decisions" that accompanies the various circumstances encountered by counsel. Id. at 688-89. As a result, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not defend a particular client in the same way." United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (alterations and internal quotation marks omitted) (quoting Strickland, 466 U.S. at 689).

As to the second prong of Strickland, a petitioner must show that, but for his or her attorney's deficient performance, there is a reasonable probability that the result would have been different. Strickland, 466 U.S. at 694. More is required than a mere showing "that the errors had some conceivable effect on the outcome of the proceeding," as "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. at 693.

6

1. Plea Bargains

"[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in Strickland." Missouri v. Frye, 566 U.S. 134, 140 (2012) (citing Hill v. Lockhart, 474 U.S. 52, 57 (1985)). At the plea stage, counsel must "communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." Purdy v. United States, 208 F.3d 41, 45 (2d Cir. 2000) (internal citations omitted). "To prevail on such a claim, a defendant must show that (i) the attorney failed to communicate a plea offer or failed to provide adequate advice about the plea and sentencing exposure, and (ii) there is a reasonable probability that but for the attorney's deficient performance, the defendant would have accepted the plea offer." United States v. Crisci, No. 00-cr-253, 2003 WL 22845669, at *2 (S.D.N.Y. Dec. 1, 2003) (citing Purdy, 208 F.3d at 49 (2d Cir. 2000); Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999)), aff'd, 108 Fed. App'x 25 (2d Cir. 2004).

2. Strategic Decisions by Counsel

Under Strickland, "strategic choices made [by counsel] after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690; see also Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) ("Actions or omissions by counsel that

might be considered sound trial strategy do not constitute ineffective assistance." (internal quotations omitted)). "[C]ounsel has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process, and . . . counsel must have wide latitude in making tactical decisions." Henry, 409 F.3d at 63 (internal quotations omitted). "Thus, the court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time, and must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. (internal quotations omitted).

If a strategic decision is found to be unreasonable—a high bar—the second prong of Strickland "requires the court to determine whether, but for counsel's deficient performance, 'there is a reasonable probability that . . . the result of the proceeding would have been different.'" Id. (quoting Strickland, 466 U.S. at 694).

III. DISCUSSION

A. Ineffective Assistance of Counsel

1. Plea Bargain

Throughout trial and even in connection with this petition, petitioner maintains that he is innocent. Maintaining innocence is inconsistent with the necessary admission of guilt for a plea. Broden v. United States, No. 13-cv-2554, 2014 WL 1226187, at *7 (S.D.N.Y. Mar. 25, 2014) (noting that a presumption of actual innocence is "in conflict with [the] argument that . . . trial counsel failed in

8

pursuing plea negotiations on [a defendant's] behalf"). For this reason alone, petitioner's argument that his counsel was ineffective for failing to explore a plea bargain lacks merit, as petitioner cannot demonstrate prejudice; a plea allocution would have required the defendant to explain, under oath, the actions he committed which make him guilty of the wire fraud. Gomez v. United States, No. 08-cr-429-04, 2013 WL 1285440, at *5 (S.D.N.Y. Mar. 28, 2013) ("A plea allocution is addressed to the elements of the offense . . . .").

Moreover, petitioner does not allege, as required by Strickland, that Mr. Cannick either failed to inform him about a plea offer from the Government or failed to explain the difference in sentencing exposure if petitioner pled guilty. Instead, he puts forth an argument that his attorney failed to explore a plea bargain, as this "would have been a stage to present information." (Mot. at 4.) But petitioner fails to specify what information his counsel should have presented during any such negotiations or how it would have affected the outcome of his case. A failure to "explore" a plea bargain is not, by itself, ineffective assistance. But in addition, Strickland does not require counsel to affirmatively request a plea bargain from the Government. See, e.g. Brown v. Doe, 2 F.3d 1236, 1246 (2d Cir. 1993) (noting that "it is not necessary that the defendant have counsel who recommends that a plea bargain be pursued" and that it may be reasonable to "reject individual plea bargaining"). As such, habeas relief is not warranted on this ground.

## 2. Strategic Decisions by Counsel

Petitioner also challenges a number of his attorneys' strategic decisions: (1) Mr. Cannick's failure to seek to delay trial to accommodate a defense witness (a private investigator) who was ill at the time; (2) Mr. Cannick's failure to challenge a number of evidentiary rulings made by the Court; (3) Mr. Cannick's method of examining petitioner on the stand; and (4) Ms. Benett's grounds chosen for appeal. All arguments lack merit. Petitioner has failed to demonstrate that any of his attorneys' decisions were unreasonable under Strickland.

As to the defense witness, petitioner claims that his counsel should have delayed trial to allow testimony from "a private investigator who had traveled to Toronto three times, and returned each time with corroboration of [his] truths." (Mot. at 5.) Petitioner claims that the investigator was sick and unavailable to testify; in fact, the investigator was not called because his testimony was mooted.[3] When counsel indicated he intended to call the witness the next morning and explained that the private investigator would be testifying about a bogus check at issue in the trial, (id. at 740–43), the Government then stipulated to the fact that the check was bogus, (id. at 743:14–16). As such, there was no prejudice to petitioner based on the witness's inability to testify. Moreover, petitioner does not explain which aspect(s) of his story the private investigator would have

---

[3] The investigator apparently had an appointment at Sloan Kettering on one of the trial days, but this is not the reason he did not testify. (Trial Tr. at 505:2–10.) In addition, it is not at all clear that this witness would have been competent to present particular "truths," or could have done so without running afoul of the hearsay rules. A private investigator is generally not a percipient witness.

10

corroborated, or even the subject matter of the "truths" to which he refers. He does not, therefore, demonstrate that counsel was ineffective for failing to seek an adjournment of the trial to accommodate the witness's illness, or that he was prejudiced by this failure.

Separately, Mr. Cannick's failure to challenge the evidentiary rulings made by this Court, his strategy during direct examination, and Ms. Benett's choice in grounds for appeal are all reasonable under Strickland. As discussed below, the Court's evidentiary decisions were made within its discretion, and counsel was not unreasonable for not challenging them. McNear v. Herbert, No. 02-cv-6033, 2005 WL 3018724, at *18 (W.D.N.Y. Oct. 26, 2005) (holding that counsel was not ineffective for failing to challenge a valid evidentiary ruling); Davison v. United States, No. 00-cv-3064, 2001 WL 883122, at *5 (S.D.N.Y. Aug. 3, 2001) (denying a claim of ineffective assistance of counsel on the ground that the challenge petitioner sought would have failed). Petitioner's claim that his "truth was not properly questioned" when he took the stand is unsupported by any detail; he fails to explain what information his attorney should have elicited, but did not. As such, there is no adequate demonstration that counsel acted unreasonably; nor is there a suggestion of information that would have affected the result of the trial. Finally, Ms. Benett's choice to challenge only the procedural and substantive reasonableness of the sentence was itself reasonable. Counsel need not raise every colorable claim in an appeal; rather, it is entirely proper for counsel to focus on the strongest claims. See Jones v. Barnes, 463 U.S. 745, 754 (1983). Here, petitioner's attorney was certainly

11

within the wide range of reasonable conduct because she highlighted the grounds on which a successful appeal was most likely. Petitioner's challenge to his attorneys' various strategic decisions fails to meet the Strickland standard.

### 3. Prosecution under 18 U.S.C. § 3231

Petitioner also claims that his attorneys were ineffective for failing to challenge the validity of 18 U.S.C. § 3231, the statute conferring jurisdiction on the federal district courts over offenses against the laws of the United States. Petitioner posits that the statute was never signed by President Truman and thus he should not have been prosecuted under it. This claim is frivolous. Courts have applied this statute for decades; indeed, several years after its passage, the Supreme Court held that it confers "jurisdiction of the subject matter, to wit, an alleged violation of a federal conspiracy statute, and, of course, of the persons charged." United States v. Williams, 341 U.S. 58 (1951). This is not a ground for relief under habeas.

### B. Other Grounds for Relief

Petitioner's remaining grounds for relief are also frivolous. First, petitioner challenges the Court's evidentiary rulings precluding a United States Treasury document and testimony from petitioner's "chartered accountant." However, even assuming these rulings were made in error, "erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue only where petitioner can show that the error deprived her of a fundamentally fair trial." Taylor v. Curry, 708

12

F.2d 886, 891 (2d Cir. 1983). Evaluating the omission "in the context of the entire record," as the Court must, petitioner does not demonstrate that the evidence was "material to the presentation of the defense," as it does not "create[] a reasonable doubt that did not otherwise exist." Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983) (quoting United States v. Agurs, 427 U.S. 97, 112–13 (1976)). Petitioner states only that the Treasury document was proof that the funds were real and that the accountant was worried his "chartered Canadian license would be tarnished." (Mot. at 8.) These conclusory allegations, standing alone, do not convince the Court that the overwhelming evidence presented at trial would have been undermined by either of the pieces of evidence he mentions. As such, plaintiff's allegations do not demonstrate that a constitutional error was committed by the Court with regards to this evidence. Taylor, 708 F.2d at 891 (quoting Agurs, 427 U.S. at 112–113).[4]

Second, plaintiff claims that he was extradited in violation of the United States-Canadian extradition treaty (the "Treaty") but gives no detail to support this assertion. (Mot. at 11.) Plaintiff's extradition was plainly lawful. The Treaty provides that "[e]xtradition shall . . . be granted for attempts to commit, or conspiracy to commit or being a party to" a number of offenses, including "[o]btaining property, money or valuable securities by false pretenses or by threat of force or by defrauding the public or any person by deceit or falsehood or other

---

[4] Additionally, these claims have been procedurally defaulted, as they were not raised on appellate review. See Massaro v. United States, 538 U.S. 500, 504, 123 S. Ct. 1690, 1693, 155 L. Ed. 2d 714 (2003) (noting "the general rule that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice"). Petitioner, who claims only that "the court appointed attorn[eys] always did as they saw fit," (Mot. at 4), fails to show cause or prejudice.

13

fraudulent means." Treaty on Extradition Between the Government of Canada and the Government of the United States of America, art. 2(2), Dec. 12, 1971, CTS 1976 No. 3. Petitioner was extradited for conspiracy to commit wire fraud, a crime which undoubtedly falls into the aforementioned category. There is no evidence to suggest his extradition was unlawful.

Finally, plaintiff appears to claim (as part of his claim regarding the validity of § 3231) that he is innocent. To the extent this is a claim of actual innocence, it is insufficient to warrant habeas relief. A claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). Petitioner offers no new evidence to support the implied assertion that "'no reasonable juror would have found' [him] guilty." Id. (citing Sawyer v. Whitley, 505 U.S. 333, 336 (1992)). His barebones claim ("I am innocent.") does not support habeas relief.

IV. CONCLUSION

For the reasons set forth above, petitioner's § 2255 motion to vacate, set aside or correct his sentence is DENIED. The Court declines to issue a certificate of appealability, as petitioner has not made a substantial showing of a denial of a federal right. See Matthews v. United States, 682 F.3d 180, 185 (2d Cir. 2012). The Clerk of Court is directed to terminate the petition at 16-cv-3053 ECF No. 1 and 07-cr-961 ECF No. 313 and to terminate 16-cv-3053.

SO ORDERED.

Dated: New York, New York
January 22, 2018

_____
KATHERINE B. FORREST
United States District Judge

Copy to:
David Norman
65940-054
AUSP Thomson
U.S. Penitentiary
Satellite Camp
P.O. Box 1002
Thomson, IL 61285